[Crim. No. 16512. In Bank. Feb. 7, 1973.]

In re EUGENE TYRONE DAVIS on Habeas Corpus.

[Crim. No. 16513. In Bank. Feb. 7, 1973.]

In re HOWARD H. COWAN, JR., on Habeas Corpus.

[Crim. No. 16530. In Bank. Feb. 7, 1973.]

In re FRANK ROBERT PALMA on Habeas Corpus.

(Consolidated Cases.)

## COUNSEL

Richard S. Buckley, Public Defender (Los Angeles), John J. Gibbons, Richard C. Burton, David H. Guthman and Laurance S. Smith, Deputy Public Defenders, and Robert G. Eckhoff, Public Defender (Santa Barbara), for Petitioners.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Edward T. Fogel, Jr., and Alan G. Novodor, Deputy Attorneys General, for Respondents.

## OPINION

**BURKE, J.**—In these consolidated cases we are called upon to review the constitutionality of the procedures (Pen. Code, § 1367 et seq.) for the commitment to, and release from, state hospital of defendants in criminal cases who have been found to lack sufficient mental competence to stand trial.[1] Although we have concluded that petitioners' initial commitments were proper, we acknowledge that some provision must be made to assure that petitioners do not face an indefinite commitment without regard to the likelihood that they will eventually regain their competence, for such an indefinite commitment has been held to offend constitutional principles of equal protection and due process. (*Jackson* v. *Indiana,* 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845].) ██ Accordingly, we adopt the rule of the *Jackson* case that no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future. Unless such a showing of probable recovery is made within this period, defendant must either be released or recommitted under alternative commitment procedures.

---

[1]In *In re Franklin,* 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465], we upheld the constitutionality of the procedures (Pen. Code, §§ 1026, 1026a) for the commitment and release of persons found to have been insane at the time they committed a criminal offense. In the cases now before us, the issue of petitioners' past insanity is not in question.

The three petitioners now before us are each accused of misdemeanor offenses. Petitioner Cowan was arrested on July 25, 1972, for disturbing the peace (Pen. Code, § 415) and assault (Pen. Code, § 240). On August 15, the municipal court on its own motion suspended further proceedings and certified Cowan to the superior court for a sanity hearing, based upon its doubts as to Cowan's present sanity.[2] Over Cowan's objection, two psychiatrists were appointed to examine him, a sanity hearing was held, and, on August 17, Cowan was adjudged "insane" within the meaning of Penal Code section 1368. The court ordered Cowan committed to Camarillo State Hospital, where he remains.[3]

Petitioner Davis was arrested on June 6, 1972, and charged with disorderly conduct (Pen. Code, § 647, subd. (i)). As in the case of petitioner Cowan, prior to trial the municipal court suspended proceedings on its own motion and certified Davis to the superior court which, on June 12, following a sanity hearing to which Davis objected, found him "insane" and committed him to Camarillo, where he remains.

Petitioner Palma was arrested on May 29, 1972, on a charge of misdemeanor battery (Pen. Code, § 242). On July 25, following certification to the superior court, a jury found him "insane" and the court committed him to Atascadero State Hospital, where he remains.

---

[2]Penal Code section 1367 provides that "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane." Under Penal Code section 1368, "If at any time during the pendency of an action and prior to a judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the defendant has been determined . . . ." The terms "insane" and "sanity" under the foregoing sections have been interpreted as referring to the capacity of the defendant to understand the nature and purpose of the proceedings against him and to conduct his own defense in a rational manner. (See *People* v. *Pennington,* 66 Cal.2d 508, 515 [58 Cal.Rptr. 374, 426 P.2d 942].)

[3]The commitment was authorized by Penal Code sections 1370 and 1372. Section 1370 in part provides that "If the jury finds the defendant insane, the trial or judgment must be suspended until he becomes sane, and the court must order that he be in the meantime committed by the sheriff to a state hospital for the care and treatment of the insane, and that upon his becoming sane he be redelivered to the sheriff. In the event of dismissal of the criminal charges before the defendant becomes sane the person shall be subject to the applicable provisions of the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code)." Under section 1372, "If the defendant is received into the state hospital he must be detained there until he becomes sane. When he becomes sane, the superintendent must certify that fact to the sheriff and district attorney of the county, and the court wherein the defendant's case is pending. The sheriff must thereupon, without delay, bring the defendant from the state hospital, and place him in proper custody until he is brought to trial or judgment, as the case may be, or is legally discharged."

Petitioners have requested writs of habeas corpus to secure their release, contending that, for various reasons, their commitment was or has become invalid. We reject the contention that the initial commitments were totally void, for the trial courts unquestionably had authority to commit petitioners, over their objection, once they were found incompetent to stand trial. Moreover, petitioners are not entitled to immediate release from confinement for they have not established, nor do they allege, either that they are now competent to stand trial or that no substantial likelihood exists that they will soon recover their competence. On the other hand, petitioners are entitled, under *Jackson,* to a prompt determination by state hospital authorities regarding the probability of their ultimate recovery, as indicated below.

### 1. *Jackson* v. *Indiana*

The petitioner in *Jackson* v. *Indiana, supra,* 406 U.S. 715, was a mentally defective deaf mute who had been charged with committing two robberies in July 1967. Under Indiana procedure, comparable to California's system, a hearing was held to determine petitioner's capacity to stand trial. The report of the examining doctors concluded that Jackson's inability to hear or communicate, coupled with his mental deficiency, left him unable to understand the nature of the charges against him or to participate in his defense. The doctors had grave doubts that Jackson would ever develop the necessary communicative skills to enable him to regain the capacity to stand trial. Accordingly, the court ordered Jackson committed to the state department of mental health until such time as the department should certify that Jackson is "sane." By the time the case was decided by the United States Supreme Court, Jackson had been committed for three and one-half years.

The court concluded that, in light of the evidence indicating that Jackson would never regain his competence, he faced an indefinite commitment void under constitutional principles of equal protection and due process. The court noted that under Indiana law, but for the pendency of unproved criminal charges, Jackson could not be so committed, at least without a showing that he was dangerous to others or unable to care for himself. Moreover, the court explained, persons civilly committed in Indiana may obtain their release once they no longer require custodial care, whereas Jackson may not be released until he regains his competence to stand trial, a standard not necessarily related to his need for care or treatment. Accordingly, the court held that by holding Jackson to both a more lenient commitment standard and a more stringent release standard than applicable to persons not charged with criminal offenses, Indiana's procedure denied Jackson equal protection of the laws. (See *Baxstrom* v. *Herold,* 383 U.S. 107 [15 L.Ed.2d 620, 86 S.Ct. 760].) As the court explained, "If criminal

conviction and imposition of sentence are insufficient to justify less procedural and substantive protection against indefinite commitment than that generally available to all others [as was held in *Baxstrom, supra*], the mere filing of criminal charges surely cannot suffice." (406 U.S. at p. 724 [32 L.Ed.2d at p. 443].)

Further, the court determined that Jackson's indefinite commitment violated due process, for it was not supported by any of the various justifications requisite to an extended commitment of mentally ill persons, namely, "dangerousness to self, dangerousness to others, and the need for care or treatment or training." (*Id.* at p. 737 [32 L.Ed.2d at p. 450].) As the court stated, "At least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." (*Id.* at p. 738 [32 L.Ed.2d at p. 451].) Jackson was committed for the purpose of enabling him to regain his competence to stand trial, yet the record established that this purpose was not being, and probably never would be, achieved.

Accordingly, the court adopted the so-called "rule of reasonableness" of the lower federal courts (see *United States* v. *Curry* (4th Cir.) 410 F.2d 1372, 1374; *United States* v. *Walker* (N.D.Cal.) 335 F.Supp. 705, 708-709), and declared: "We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. [Fn. omitted.] Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. In light of differing state facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits." (406 U.S. at p. 738 [32 L.Ed.2d at p. 451]; see also *McNeil* v. *Director, Patuxent Institution,* 407 U.S. 245 [32 L.Ed.2d 719, 92 S.Ct. 2083] [invalid, indefinite commitment "for observation" of convicted felon].)

The court rejected Jackson's contention that the pending criminal charges against him should be ordered dismissed because he was denied a speedy trial or because his indefinite commitment denied him due process. The court noted that these issues had not been presented to, or ruled upon by, the Indiana courts in the prior proceedings. The court also noted the possi-

bility that Jackson might, under appropriate Indiana procedure, be permitted to raise certain defenses such as insufficiency of the indictment, or make certain pretrial motions, through counsel even though Jackson himself remains incompetent. The case was accordingly remanded to the state courts for further proceedings.

In view of the similarities between California and Indiana procedure, it seems evident that we must adopt *Jackson's* "rule of reasonableness" in order to comply with the constitutional principles which controlled that case. As in Indiana, the standards for commitment and release of persons sought to be civilly committed in this state are significantly different than those prescribed by Penal Code section 1367 et seq., for persons found to be incompetent to stand trial. (See Welf. & Inst. Code, § 5000 et seq.; *Thorn* v. *Superior Court,* 1 Cal.3d 666 [83 Cal.Rptr. 600, 464 P.2d 56]; *In re Gonzales,* 6 Cal.3d 346 [99 Cal.Rptr. 17, 491 P.2d 809]; cf. *In re Franklin, supra,* 7 Cal.3d 126, 146.) For example, to detain (beyond an initial 72-hour treatment and evaluation period and an additional 14-day intensive treatment period) those persons alleged to have threatened, attempted or actually inflicted physical harm to others, the court or jury must first find that such threat, attempt or harm actually occurred, and that the person "as a result of mental disorder, presents an imminent threat of substantial physical harm to others, . . ." (Welf. & Inst. Code, § 5304.) On the present record, it is at least questionable whether, but for the unproved charges against them, petitioners could be committed under section 5304. This seems especially true of petitioner Davis, whose charges are evidently based solely upon his falling asleep in a laundromat.

Moreover, we accept *Jackson's* premise that due process demands that the duration of commitments to state hospitals must bear some reasonable relation to the purpose which originally justified the commitment. For example, in *In re Gary W.,* 5 Cal.3d 296, 302-303 [96 Cal.Rptr. 1, 486 P.2d 1201], we noted that the chief purpose of a juvenile commitment to the Youth Authority under Welfare and Institutions Code section 1800 et seq., is to provide treatment for the underlying cause of the ward's dangerousness, and that any person so committed who is not receiving treatment may seek his release through appropriate habeas corpus procedures. Similarly, in *In re Franklin, supra,* 7 Cal.3d 126, 136-138, we explained that pre-hearing institutional commitment under Penal Code section 1026 of persons acquitted of a criminal offense by reason of their insanity may extend no longer than reasonably necessary to determine whether or not they have recovered their sanity.

In the instant cases, commitment of petitioners Cowan, Davis and Palma was justified as necessary to provide observation, care and treatment of their

mental condition, with a view toward restoring their capacity to stand trial. (See Pen. Code, § 1370; Note, *Incompetency to Stand Trial,* 81 Harv.L. Rev. 454, 462.) Under *Jackson* v. *Indiana, supra,* 406 U.S. 715, and the authorities cited above, if petitioners are making no reasonable progress toward that goal, they must be released or held subject to alternative commitment procedures. Unlike the situation in *Jackson,* however, the record in the cases before us furnishes no basis for concluding that petitioners are not likely to respond to treatment. Accordingly, it would be premature for us to order petitioners released from confinement at this time.

In view of the fact, however, that petitioners have been confined in state hospitals for several months, we believe that the hospitals' authorities should report without undue delay regarding the current status of petitioners' progress toward competence.[4] Such reports should be prepared for all persons heretofore or hereafter committed as incompetent to stand trial, and should be submitted to the superior court which originated the commitment. With respect to future commitments, we think that in order to comply with *Jackson's* demands the trial courts should henceforth direct the appropriate state hospital authorities to commence an immediate examination of the person committed and, within a reasonable time,[5] report to the court the result of that examination and estimate the additional time probably necessary to restore the person to competence. Should the person committed desire to challenge the report's conclusions, reasonable opportunity should be provided him to do so.[6]

---

[4] The record in petitioner Cowan's case discloses that certain medical reports written in August 1972 prior to his commitment estimated that it would require two or three months' care to restore him to competence. Accordingly, the court which committed Cowan ordered the hospital authorities to prepare a progress report to be submitted to the court on December 11, 1972. Although we have not been informed of the content of this report, it may fulfill the requirements we set forth in this opinion.

[5] The court in *Jackson* v. *Indiana, supra,* 406 U.S. 715, 738 [32 L.Ed.2d 435, 451], declined to set forth any "arbitrary time limits" within which state hospital authorities must act. Ordinarily a 90-day period for the initial observation of a defendant committed under section 1370 should be adequate to allow the hospital authorities a reasonable opportunity to report regarding the likelihood of a defendant's recovery. (See Pen. Code, § 1370.1 [90-day period for report on person incompetent to stand trial by reason of mental retardation]; Pen. Code, § 1026a [90-day period for prehearing observation and report on person found insane when offense occurred]; *In re Franklin, supra,* 7 Cal.3d 126, 142-143 [same].) We acknowledge, however, that in certain cases 90 days might be insufficient to report adequately regarding the status of a particular defendant and, accordingly, we leave the question to the sound discretion of the trial court.

[6] It has been suggested that an automatic report requirement such as we impose herein is unnecessary in view of the availability of habeas corpus to obtain release from confinement in an appropriate case. (See Welf. & Inst. Code, § 7250.) It must be kept in mind, however, that we are dealing with persons who have been committed

If the report discloses that there exists no reasonable likelihood that the person will recover his competence to stand trial in the foreseeable future, then the court should either order him released from confinement or initiate appropriate alternative commitment proceedings under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.). On the other hand, if the report is optimistic regarding the person's probable recovery, the court should continue his commitment and require the hospital authorities to furnish, within a reasonable time,[7] additional periodic reports regarding the person's progress. ■ The trial court necessarily must exercise sound discretion in deciding whether, in a particular case, sufficient progress is being made to justify continued commitment pending trial. To guide its discretion, the trial court should consider, among other things, the nature of the offense charged, the likely penalty or range of punishment for the offense, and the length of time the person has already been confined. Obviously, if a defendant is charged only with a minor misdemeanor a lengthy commitment to state hospital normally would be unjustified. On the other hand, if, despite the minor nature of the charge upon which defendant is currently held, the hospital authorities have cause to believe the defendant constitutes a serious threat to his own safety or that of others, they should report those beliefs to the court so that it may order the initiation of appropriate commitment proceedings, as indicated above.

### 2. Other Contentions

In addition to contending that the indefinite commitment of persons found incompetent to stand trial violates constitutional principles, petitioners Cowan and Davis have also argued that California's procedures are objectionable in other respects as well. As we will explain, most of petitioners' objections are rendered moot by our determination that, under *Jackson,* an indefinite commitment of such persons can no longer survive constitutional scrutiny.

Petitioners argue that they should have been given the option of proceeding to trial, rather than being committed over their objection. They rely upon cases which hold that the trial court cannot compel a criminal defend-

---

to state hospitals for mental disorders rendering them incompetent to participate in their own defense. It seems clearly inappropriate to place upon such persons the burden of initiating proceedings to secure their freedom. Although habeas corpus may be an adequate remedy for persons who have *recovered* their competence and who seek release on that ground, petitioners and others similarly situated may be entitled to relief under *Jackson* even though they remain incompetent. (See Note, *supra,* 81 Harv.L.Rev. at pp. 471-472.)

[7]Although the matter must rest in the discretion of the trial court, in the ordinary case such additional reports should be furnished no less often than every six months.

ant to plead his *past* insanity as a defense. (See *Lynch* v. *Overholser*, 369 U.S. 705 [8 L.Ed.2d 211, 82 S.Ct. 1063]; *People* v. *Redmond*, 16 Cal.App. 3d 931 [94 Cal.Rptr. 543].) These cases do not, of course, support the proposition that the trial court may permit a defendant to waive his own *present* incompetence to stand trial. Although, as petitioners point out, Penal Code section 1369 appears to contemplate that defendant will open the case at the sanity hearing and offer evidence in support of his alleged incompetence, the *Redmond* case explains that when a doubt arises concerning defendant's present sanity, the trial court may have to take the initiative in obtaining proof on that issue. (16 Cal.App.3d at pp. 938-939 and fn. 7.) This follows because, under Penal Code section 1367, "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane." Section 1367 codifies the "proper state policy to prohibit the trial of an accused person unless he understands the nature of the proceedings against him and can assist in preparing a rational defense." (*People* v. *Ashley*, 59 Cal.2d 339, 359 [29 Cal.Rptr. 16, 379 P.2d 496].) ■ Accordingly, this court has held that when a "doubt" arises in the mind of the trial judge regarding defendant's present sanity or competence to stand trial, it becomes his duty to certify the defendant for a sanity hearing; the matter is jurisdictional and cannot be waived by defendant or his counsel. (*People* v. *Pennington, supra,* 66 Cal.2d 508, 521; *People* v. *Westbrook,* 62 Cal.2d 197, 203-204 [41 Cal.Rptr. 809, 397 P.2d 545]; *People* v. *Aparicio,* 38 Cal.2d 565, 568 [241 P.2d 221].) Moreover, as pointed out by the United States Supreme Court in *Robinson* v. *Pate,* 383 U.S. 375, 384 [15 L.Ed.2d 815, 821, 86 S.Ct. 836], "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial. [Citation.]"

*Jackson* v. *Indiana, supra,* 406 U.S. 715, 740, and footnote 29 [32 L.Ed.2d 435, 452], does recognize that the states are not precluded from allowing an incompetent defendant to raise at the pretrial level certain limited issues, such as the insufficiency of the pleadings, which do not require his presence or involve his criminal responsibility. Although there have been proposals to modify the Penal Code to permit the trial of such limited issues (see Penal Code Revision Project, Tentative Draft No. 2, Joint Legislative Committee for the Revision of the Penal Code (1968), § 539, subd. (5)[8]), under existing law "all proceedings" must be suspended once a doubt arises regarding defendant's competence (see Pen. Code,

---

[8]Subdivision (5) of proposed section 539 provides in part that "A finding of incompetency to be proceeded against or to be sentenced and a commitment to the Director of Mental Hygiene made pursuant to this subsection does not preclude the trial of any issues of law which are capable of fair determination prior to trial and without the personal participation of the defendant."

§ 1368). In any event, none of the petitioners now before us sought appropriate pretrial relief.[9]

■ Petitioners contend that their commitment denied them the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 13, of the California Constitution. They submit that the practical effect of an indefinite commitment under Penal Code section 1368 is to leave the defendant "perpetually vulnerable to trial on a charge years or decades old." The charges against these petitioners were, however, considerably more recent and, under our holding set forth above, the threat of indefinite commitment is no longer a substantial one.

Prior cases have rejected the contention that the provisions of Penal Code section 1368 et seq., operate to deprive a committed defendant of his right to a speedy trial. (See *People* v. *Ashley, supra,* 59 Cal.2d 339, 358-359; *People* v. *Lohman,* 6 Cal.App.3d 760, 769 [86 Cal.Rptr. 221]; *People* v. *Hocking,* 140 Cal.App.2d 778, 783-784 [296 P.2d 59].) Moreover, petitioners have not alleged that the delay thus far incurred in bringing them to trial has prejudiced them, apart from the general inconvenience necessarily experienced by reason of their commitment to state hospital. (See *Jones* v. *Superior Court,* 3 Cal.3d 734, 740 [91 Cal.Rptr. 578, 478 P.2d 10].) It is conceivable that in an aggravated situation, an extended commitment could amount to a denial of the right to a speedy trial, justifying dismissal of all pending charges. (See *Jackson* v. *Indiana, supra,* 406 U.S. 715, 740, and fn. 27 [32 L.Ed.2d 435, 451-452].) Yet in the instant cases, in view of the availability to petitioners of an immediate hearing on the question of their progress toward competence, we think that an outright dismissal of the pending charges would be unwarranted.

■■ Petitioners' final contention is that Penal Code section 1370 is invalid in failing to provide opportunity for a defendant to initiate proceedings for his release on the ground that he has recovered his competence. Yet petitioners, none of whom alleges that he is now competent to stand trial, are not in a position to attack the statute on this basis. (See *People* v. *Maugh,* 1 Cal.App.3d 856, 862 [82 Cal.Rptr. 147].) In any event, it seems clear that ample opportunity exists to obtain release on this ground, either through the initiation of habeas corpus proceedings (see Welf. & Inst. Code,

---

[9] Petitioner Davis did request the superior court, at the time of his sanity hearing, to require the People to make "a prima facie showing that they would be able to proceed on the underlying criminal case in the event that Mr. Davis was returned to stand trial." The court properly denied the request on the ground that it had no jurisdiction, during a sanity hearing, to require such a showing. Davis did not seek to challenge the sufficiency of the complaint by way of demurrer. (See Pen. Code, § 1002 et seq.)

§ 7250; *People* v. *Ashley, supra,* 59 Cal.2d 339, 359; *In re McManus,* 63 Cal.App.2d 318 [146 P.2d 948]), or by contesting the status report of the hospital authorities at the hearing necessitated by our holding in part I of this opinion.

The orders to show cause heretofore issued are discharged and the petitions for writs of habeas corpus are denied. The Superintendents of Atascadero and Camarillo State Hospitals are hereby ordered to report without undue delay to the appropriate superior courts regarding the progress, if any, achieved by the petitioners in their respective care, and their prognosis as to the future.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Files, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.