[Civ. No. 17404. Fourth Dist., Div. Two. Dec. 20, 1976.]

In re LAWRENCE GEORGE NEWMANN on Habeas Corpus.

## COUNSEL

Charles E. Ward, Public Defender, and Littleton M. Gunn, Deputy Public Defender, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and A. Wells Petersen, Deputy Attorneys General, for Respondent.

## OPINION

GARDNER, P. J.—This petition for writ of habeas corpus by a person confined in Patton State Hospital raises issues concerning the constitutional rights of persons involuntarily confined after being found mentally incompetent to stand trial on criminal charges. The petition was originally filed in the Supreme Court and then transferred to this court for hearing and decision.

Petitioner was arrested in Los Angeles and charged with burglary and attempted robbery.

On February 6, 1975, at the time set for arraignment, a competency hearing was held in Los Angeles County Superior Court. Evidence of petitioner's incompetency was received from two qualified medical examiners and the trial judge found petitioner incompetent to stand trial and also found that petitioner's incompetence was due to mental retardation. Petitioner was remanded to Pacific State Hospital in Pomona and the South Central Regional Center was ordered to examine petitioner and report its conclusions and recommendations to the court by May 1, 1975.

One of the three reports submitted by the regional center pursuant to this order has been included in the record. This report concludes that petitioner is moderately mentally retarded[1] and "appears to be suffering symptoms of a personality disorder (antisocial personality) and the possibility of periodic psychotic episodes has not been ruled out." The report also found that petitioner was a danger to others.

On May 28, 1975, a hearing was held in Los Angeles County Superior Court to review the reports submitted by the regional center. The court found that petitioner was not subject to commitment as a mentally retarded person. (See Welf. & Inst. Code, § 6500 et seq.) The reasons for the finding are not stated in the minute order. The court ordered the regional center to place petitioner in Patton State Hospital, which is located in San Bernardino County, and to report again to the Los Angeles County Superior Court, on or before May 1, 1976, concerning petitioner's progress toward regaining his competency.

Petitioner filed a habeas corpus petition in San Bernardino County Superior Court seeking release from Patton State Hospital. On June 22, 1976, the trial judge in San Bernardino signed an order finding: (1) petitioner's dominant disability is psychosis; (2) petitioner is also mentally retarded; (3) petitioner is incompetent and not likely to regain his competency in the foreseeable future; and (4) Penal Code section 1370.1, under which petitioner is being confined, is not unconstitutional. The order directed the Public Guardian of San Bernardino County to initiate conservatorship proceedings for petitioner under the Lanterman-

---

[1]Petitioner's intelligence quotient (I.Q.) is apparently in the 40-50 range.

Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.). The order concluded with a denial of the writ of habeas corpus.

On July 26, 1976, the superior court in San Bernardino amended its earlier order upon representation by the Public Guardian of San Bernardino County that his office was unable to institute conservatorship proceedings for petitioner. The court deleted reference to conservatorship and instead directed the department of health to evaluate petitioner and recommend a suitable disposition.

Petitioner thereafter filed a habeas corpus petition in this court which was summarily denied on August 26, 1976.

The instant petition was filed in the Supreme Court on September 2, 1976, and transferred to this court by order of the Supreme Court dated October 6, 1976.

On October 13, 1976, a petition for conservatorship for petitioner was filed in Los Angeles by the Los Angeles County public guardian.

Petitioner here contends that his confinement is in violation of certain constitutional safeguards declared in *Jackson* v. *Indiana*, 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845] and further construed in *In re Davis*, 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018]. We have concluded that the contention is meritorious.

In *Jackson* the petitioner, a mentally defective deaf mute, was found incompetent to stand trial for robbery. According to Indiana law the petitioner was then committed to the state department of mental health until his competency should be restored, even though examining doctors had expressed grave doubts that this would ever occur. The United States Supreme Court concluded that such an indefinite and probably permanent commitment violated constitutional guarantees of due process and equal protection.

The equal protection violation was premised on a finding that merely because defendant faced unproven criminal charges he had been subjected to both a more lenient commitment standard and a more stringent release standard than those applicable to persons not charged with criminal offenses. The court held that the pending criminal charges did not provide a sufficient justification for this disparity of treatment. The court further held that due process required a rational relation

between the nature and duration of confinement and the purpose of the commitment. As petitioner was unlikely to recover competency, and as he had never been adjudged a danger to himself or others, no valid purpose for confinement had been demonstrated.

*In re Davis, supra,* 8 Cal.3d 798, was a consolidated proceeding involving petitions for habeas corpus by three persons confined pursuant to Penal Code section 1370 following a finding of incompetency to stand trial. Our Supreme Court adopted *Jackson* and found that the petitioners' confinement had not been in total compliance with the requirements of *Jackson.* However, the court concluded that the commitments were not void, that Penal Code section 1370 was not unconstitutional, and that the defects could be remedied by further proceedings. The court stated that hearings should be held to determine the likelihood that petitioners would recover their competency. If no such likelihood existed, the court declared, petitioners would be entitled to release unless commitment under one of the alternative procedures was obtained.

On the question of when the initial determination of probability of recovery should be made, the court stated: "Ordinarily, a 90-day period for the initial observation of a defendant committed under section 1370 should be adequate to allow the hospital authorities a reasonable opportunity to report regarding the likelihood of a defendant's recovery. [Citations.] We acknowledge, however, that in certain cases 90 days might be insufficient to report adequately regarding the status of a particular defendant and, accordingly, we leave the question to the sound discretion of the trial court." (*In re Davis, supra,* 8 Cal.3d 798, 806, fn. 5.)

Regarding periodic reviews thereafter of a defendant's progress toward regaining competency, the court stated: "Although the matter must rest in the discretion of the trial court, in the ordinary case such additional reports should be furnished no less often than every six months." (*In re Davis, supra,* 8 Cal.3d 798, 807, fn. 7.)

Penal Code section 1370, the statute which generally provides for proceedings subsequent to a determination that a defendant is mentally incompetent to stand trial, is quite lengthy and need not be reproduced here. For our purposes it is enough to note that it provides an elaborate system of procedure evidently designed to meet the constitutional requirements set forth in *Jackson* and *Davis.*

In a particular class of cases Penal Code section 1370 is superseded by Penal Code section 1370.1. As this latter statute is central to the instant dispute, we quote it in full: "Notwithstanding the provisions of Section 1370, if the court has reason to believe that the defendant's inability to understand the nature and purpose of the criminal proceedings taken against him so as to be able to conduct, or assist in, his own defense in a rational manner is a result of mental retardation, the trial or judgment shall be suspended, and the court shall order the regional center for the mentally retarded, which serves the counties in which the court is situated, and which is established under the Lanterman Developmental Disabilities Services Act, Division 25 (commencing with Section 38000) of the Health and Safety Code, to examine the defendant and within 90 days report to the court the results of the examination and its recommendation for the care and treatment of the defendant. The court may make such orders as may be necessary to provide for the examination of such person by the regional center and for the safekeeping, necessary medical treatment, care or restraint of the defendant pending further orders of the court following receipt of the regional center's report, in the county hospital, his own home, in a state hospital, or in such other place, excluding a jail, as will afford access to personnel of the regional center for the purpose of examination and suitable provisions for the safety and comfort of the defendant. If the regional center reports that the defendant is not mentally retarded, the court shall make the appropriate order under Section 1370. If the regional center reports that the defendant is mentally retarded and is a danger to himself or others and therefore subject to commitment to a state hospital pursuant to Article 5 (commencing with Section 6500), Chapter 2, Part 2, Division 6, of the Welfare and Institutions Code, the regional center shall recommend the initiation of proceedings to commit the defendant to a state hospital pursuant to Article 5. If the regional center reports that the defendant is mentally retarded but is not subject to commitment to a state hospital pursuant to Article 5, the regional center shall make such recommendations as it deems best for the care and treatment of the defendant. Upon receiving the report and recommendations of the regional center, the court shall order that commitment proceedings pursuant to Article 5 be instituted if such defendant is subject to commitment thereunder, or, if not so subject to commitment, it shall order the defendant placed in a home or facility, or state hospital recommended by the regional center for care and treatment or in some other home, facility, or state hospital approved by the regional center for the care and treatment of the defendant. The regional center shall reexamine each defendant placed in a home or facility or state hospital,

or committed to a state hospital, at least once each year to ascertain whether the mental retardation of the defendant has changed to such an extent that defendant is able to understand the nature and purpose of the criminal proceedings taken against him so as to be able to conduct, or assist in, his own defense in a rational manner. If the regional center ascertains that the mental retardation of the defendant has changed to such an extent, it shall certify the finding to the sheriff and district attorney of the county, and the court wherein the defendant's case is pending. The sheriff shall thereupon, without delay, bring the defendant from the home, facility, or state hospital, as the case may be, and place him in proper custody until he is brought to trial or judgment, as the case may be, or is legally discharged. In event of dismissal of the criminal charges before such certification is made, the person shall be referred to the appropriate regional center for services under the Lanterman Developmental Disabilities Services Act, Division 25 (commencing with Section 38000) of the Health and Safety Code."

Although the actions taken by the Los Angeles County Superior Court were in full compliance with the foregoing section, it is evident that the procedures followed do not measure up to the constitutional standards enunciated in *Jackson* and *Davis*. As previously mentioned, *Davis* requires that within a reasonable period, ordinarily 90 days, following a finding of incompetency to stand trial the court must determine whether there is a substantial likelihood that the defendant will recover his competence. If the court finds there is no likelihood of recovery, or if the court makes no finding on this issue within a reasonable time, then the pending criminal charges no longer afford a valid basis for involuntary confinement. The defendant must be released, or an alternative basis for confinement must be established. In the case at bench the Los Angeles Superior Court ordered that petitioner be confined for a year without having made a finding that he was likely to regain his competence.

The Attorney General argues that the 90-day minimum evaluation period specified in *Davis* should not be applied where a defendant's incompetence to stand trial is caused by mental retardation, for the reason that it is more difficult to evaluate the likelihood of recovery from this form of disability. We disagree.

The Attorney General has produced no evidence that evaluation of a mentally retarded person requires more time than evaluation of another form of mental disability. We note that section 1370.1 provides for a 90-day evaluation to determine: (1) whether the defendant is mentally

retarded, (2) whether the defendant, if mentally retarded, is subject to commitment as a mentally retarded person, and (3) what disposition should be made if the defendant, though mentally retarded, is not subject to commitment. It would seem that if these matters can be determined within 90 days, then defendant's likelihood of recovery should also be ascertainable within the same period.

As the Supreme Court indicated, the 90-day minimum is not absolute but may be extended in the court's discretion provided, of course, that reasonable grounds for such extension are established. We conclude that these guidelines are fully applicable to proceedings under Penal Code section 1370.1.

█ It has now been determined, in the habeas corpus proceeding in San Bernardino County, that petitioner is not likely to regain his competency in the foreseeable future. Therefore, under the cases previously cited, it follows that the pending criminal proceedings against petitioner in Los Angeles County no longer provide a valid basis for petitioner's continued involuntary confinement. We note, however, that conservatorship proceedings for petitioner are now under way in Los Angeles County Superior Court. From the record before us, it appears that the best interests of petitioner would be served by placing his custody in the care of that court, rather than ordering his immediate release.

The order to show cause is discharged and the writ of habeas corpus is denied. The medical director of Patton State Hospital is directed to notify the Superior Court of Los Angeles County forthwith that petitioner is being held subject to the order of the Los Angeles Superior Court in which the conservatorship proceedings are now pending.

Tamura, J., and Morris, J., concurred.