[No. C001735. Third Dist. May 13, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
BURTON DAY, Defendant and Appellant.

## COUNSEL

Mary G. Swift, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael J. Weinberger and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DEEGAN, J.**\*—Following a jury trial, defendant Burton Day was convicted of one count of violating Penal Code[1] section 245, subdivision (b) (assault with a deadly weapon) and one count of violating section 148 (resisting a police officer). He was sentenced to four years in state prison and appeals from the ensuing judgment. Defendant contends the trial court erred in failing to determine retroactively whether he had been incompetent to stand trial even though the new trial motion tendering the issue was withdrawn. Defendant further contends his trial counsel was ineffective because he failed to timely challenge his competence. For the reasons expressed below, we will affirm the judgment.

---

\*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] All further references to sections are to the Penal Code unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

Given the nature of the contentions on appeal, a brief recitation of the facts underlying the offenses will suffice. On August 17, 1985, after being informed by a motorist that a pedestrian had thrown an object at his car on Interstate 80, California Highway Patrol Officer Robert Boobar spotted defendant walking along the freeway. Defendant matched the description given by the motorist. When asked by the officer if he had thrown an object at a passing car, defendant said, "No," and started to walk away. Boobar noticed that defendant had rocks in his hand; he informed defendant that he was under arrest. Defendant began to walk away again. A physical confrontation ensued between defendant and the officer, culminating in defendant striking Boobar on the head with an object. The officer suffered a cut and a bruise, vertigo and nausea, and intermittent hearing loss.

Defendant did not testify at trial. The jury found him guilty of assault with a deadly weapon (§ 245, subd. (b)) and resisting a police officer (§ 148). The verdict was entered on November 15, 1985. Defendant appeared before the court on December 13, 1985, for sentencing. In the statement in support of probation, defense counsel requested a psychologist's evaluation to determine defendant's competence pursuant to section 1368.

In support of his request, counsel asserted that before trial defendant declined to discuss the case and during trial "spent his time reading, doodling and acting as if the proceedings did not involve him at all." The prosecutor challenged defense counsel's failure to come forth with this request earlier. Defense counsel told the court that before the trial he received an oral report from a psychiatrist saying that defendant "certainly had problems, but . . . given the case history and information he had been provided with he was not going to say [defendant] was 1368. [¶] After I had confirmed the case for trial and actually was picking a jury, I think I got a written report from the psychiatrist saying, Well, maybe he's 1368 because he can't cooperate with counsel." Defense counsel also said that he discussed the matter at that time with his supervisor who instructed him to proceed with the trial.[2]

The trial court suspended criminal proceedings and appointed a psychologist and a psychiatrist to evaluate defendant. On February 10, 1986, after a court trial, defendant was found to be suffering from a mental disorder in that he "is not able to cooperate in a rational manner with counsel in presenting his defense and [is] unable to understand the proceedings by way

---

[2]During a later conversation with the court, defense counsel asserted that he merely discussed the *oral report* with his supervisor.

of inability to cooperate." Defendant was committed to Atascadero State Hospital.

In August 1986, defendant was certified competent and returned to the court for further proceedings. On August 7, 1986, defendant filed a motion with the trial court for a new trial on the ground that he had been incompetent to stand trial. In the moving papers, defense counsel contended that prior to trial he had observed defendant's "very guarded behavior," and refusal to cooperate in preparing a defense, and his violent outbursts, and "therefore sought a confidential psychiatric evaluation." The papers further asserted that "[t]he examining doctor initially reported that Mr. Day was clearly suffering from mental problems but could not say they interfered with Mr. Day's ability to cooperate with counsel. Just as trial was commencing, the psychiatrist reported that Mr. Day's mental problems likely did impair his ability to cooperate with his defense, but the degree of interference was difficult to tell with the information then available, and other psychiatrists might well conclude that because much of Mr. Day's intellectual functioning appeared to be intact, that he could cooperate with counsel for trial."

On August 15, 1986, the court found that defendant had been restored to competence; it therefore reinstated the criminal proceedings. The judge then addressed defendant's new trial motion. Defense counsel orally asserted that although he had initially received an oral report from the psychiatrist, Dr. Thomson, to the effect that defendant had problems but probably could proceed, two days into the trial he received "a written report that said, probably, he does have problems." Counsel stated that he then called Dr. Thomson who told him that "another psychiatrist might well say he could still cooperate."

The court agreed to review the report from Dr. Thomson in its consideration of defendant's new trial motion and ordered that the report be placed in the record. The court also appointed another psychiatrist, Dr. Normington, to evaluate defendant. The court inquired of defense counsel why he failed to raise the section 1368 issue when he received Dr. Thomson's report. Counsel responded that defendant "had been to some degree cooperating, to some degree paying attention and I was uncertain." He added that because of the doctor's oral opinion that other psychiatrists might not agree with him and the defendant's cooperation at trial, he "wasn't in a position to say for sure that he was or wasn't 1368. . . ."

On September 17, 1986, defendant reappeared before the court on the new trial motion. At that time, the court said it had read and agreed with the statement of facts set forth in the prosecution's opposition papers. That

document states: "Prior to the jury trial commencing, defendant's counsel in chambers indicated to the [Court] and myself that he had had the defendant examined by a psychiatrist pursuant to Penal Code Section 1368 and based on the psychiatrist's evaluation and his interviews with the defendant, he was prepared to proceed. He indicated that if at any time during the trial he thought that the defendant's mental condition had changed, he would interrupt the proceedings. He did not do so." The court also asserted that during the trial it was never apprised of Dr. Thomson's written report.

Defense counsel then informed the court: "Dr. Thomson gave me an oral report that said that [defendant] obviously had psychiatric problems but that he didn't think they would interfere. Then after that [my supervisor] and I went to talk to [defendant] and then I called Dr. Thomson back and talked to him some more and then, a few days later, Dr. Thomson gave me an oral report that said he thought Mr. Day probably shouldn't, couldn't cooperate for trial. But then he also said he wasn't at all sure other psychiatrists would agree with that. [¶] Now I think I got that report the day we started picking the jury. Then I got a written report that I actually got . . . after we had taken the testimony of the key prosecution witness . . . . And the written report said this man is not capable of standing trial. At that point I went back down and discussed it with my supervisor, who said 'Let's at least finish with the trial. . . .'"

The court requested that defense counsel prepare a declaration setting forth the information he received from Dr. Thomson. That declaration, filed October 1, 1986, asserts the following: Prior to the preliminary hearing, defense counsel "became concerned with [defendant's] lack of cooperation with counsel in not discussing the case beyond simple denial of the charges." At counsel's request, the municipal court magistrate appointed Dr. Thomson to report confidentially to defense counsel. On the day before the trial confirmation date, Dr. Thomson orally told counsel that defendant had cooperated with him and that, therefore, defendant "was not currently incapable of cooperating with counsel . . . ." Defendant "continued not to talk with counsel." Counsel again contacted Dr. Thomson. Defense counsel and his supervisor then interviewed defendant in jail; defendant said he wanted to get his own attorney. Following the interview, defendant "began to talk with counsel again, though he still insisted he was going to get his own counsel and would only discuss proceedures [sic] related to the case. He cooperated about obtaining clothes for trial and seemed to understand what counsel explained of trial procedures, though he said he was not crazy and opposed any Penal Code [section] 1386 [sic] proceedings." On November 6, 1985, [two days before trial] counsel again talked to Dr. Thomson. Defendant "now appeared to be cooperative with counsel . . . . Counsel and Dr. Thomson agreed that counsel would proceed with trial and let Dr.

Thomson know if [defendant's] behavior changed significantly." "At some point" counsel received Dr. Thomson's written report. "Dr. Thomson's present recollection is that counsel had that written report by the time of their November 6th telephone conference. Since the written report was followed by a later telephone conference on November 6th, counsel proceeded on the basis of the later discussion."

On October 10, 1986, defendant reappeared before the court for the hearing on the new trial motion. The trial court stated that it had before it the reports of Drs. Thomson and Normington.[3] Defense counsel told the court that Dr. Thomson's written report was followed by an oral report which "in effect, rescinded the written report." Counsel further asserted, "It is plain that Dr. Thomson told me in an oral report that's after the date of the written report that we could proceed." After some discussion with the court, defense counsel told the court that "defendant told me this morning that he would prefer not to proceed on this motion." The court asked defendant personally whether he wished to withdraw his motion for a new trial; defendant responded affirmatively. The new trial motion was withdrawn. The court subsequently sentenced defendant to an aggregate term of four years in state prison.

## DISCUSSION

Defendant contends that the trial court erred in ceasing the inquiry into his competence at the time of trial. Defendant's claim appears to be that, his withdrawal of his new trial motion notwithstanding, the trial court should have decided the issue.

The conviction of an accused person while he is legally incompetent violates due process. (*People* v. *Hale* (1988) 44 Cal.3d 531, 539 [244 Cal.Rptr. 114, 749 P.2d 769].) ▮▮ The procedures for inquiry into the competence of a defendant during criminal proceedings are set out in sections 1367-1375.5. Section 1367 provides, in pertinent part: "A person

---

[3] Dr. Thomson's report, dated October 29, 1985, concludes that defendant's "refusal to talk with counsel and his threats to the police in court and jail convince me that he is not able to cooperate rationally with counsel in the preparation of his own defense. He would almost certainly benefit from a course of treatment with neuroleptic drugs." Dr. Normington's report is dated September 10, 1986, and states that, after reviewing his January 1986 report, the January 1986 psychological assessment of another doctor, medical reports from Atascadero State Hospital, and a letter from defense counsel, he concluded that defendant was not competent to stand trial in November 1985. The report states: "I base this conclusion on the fact that at the time of my examination . . . in January 1986, it was my conclusion that he was not then competent to stand trial due to his severe mental illness. It was further my conclusion then that this illness was of more than one year duration. I would therefore now deduce that Mr. Day's lack of competency which was evident in January 1986 was also present two to three months earlier."

cannot be tried or adjudged to punishment while such person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." Section 1368 implements section 1367 by requiring a judge to determine present competence: "[I]f, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . . [¶] (b) If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court shall order that the question of defendant's mental competence is to be determined in a hearing . . . ."

Once a doubt arises in the mind of the judge as to the present competence of the defendant, the court has no power to proceed. (See *People* v. *Hale, supra,* 44 Cal.3d 531, 541; *People* v. *Pennington* (1967) 66 Cal.2d 508, 521 [58 Cal.Rptr. 374, 426 P.2d 942].) "[T]he matter is jurisdictional and cannot be waived by defendant or his counsel. (Citations.)" (*In re Davis* (1973) 8 Cal.3d 798, 808 [106 Cal.Rptr. 178, 505 P.2d 1018].) The trial court *must* order a competency hearing when substantial evidence of the defendant's *present mental incompetence* is presented. (See *People* v. *Pennington, supra,* 6 Cal.2d 508, 518.) ■ The testimony of one mental health professional that the defendant is unable to assist counsel or understand the proceedings because of a mental defect or developmental disability constitutes substantial evidence sufficient to warrant a competence hearing. (*People* v. *Stankewitz* (1982) 32 Cal.3d 80, 92 [184 Cal.Rptr. 611, 648 P.2d 578, 23 A.L.R.4th 476]; *People* v. *Pennington, supra,* 66 Cal.2d 508, 516-519 relying on *Pate* v. *Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836]; *People* v. *Campbell* (1987) 193 Cal.App.3d 1653, 1662 [239 Cal.Rptr. 214].) ■ Once such a doubt is raised in the mind of the trial court, a section 1368 hearing must be held even if prior to the hearing the court's initial expression of doubt has been mitigated. (See *People* v. *Hale, supra,* at pp. 540-541.)

In this case, the trial court properly ordered the competency hearing when evidence of defendant's incompetence was presented for the first time at the sentencing hearing. That hearing resulted in a determination of incompetency and a suspension of the proceedings.

■ Defendant claims on appeal, however, that the trial court had a duty to resolve the question of his competence *at the time of trial* when the question was tendered by defense counsel after the verdict. We disagree.

Section 1368 does not provide for a retroactive determination of a defendant's competence. ■ Moreover, once defendant withdrew his new trial motion, the trial court had nothing upon which to act. A new trial may be granted to the defendant "upon his application." (§ 1181) The court has no power to order a new trial on its own motion. (§ 1181; *People* v. *Rothrock* (1936) 8 Cal.2d 21, 24 [63 P.2d 807]; see also Witkin, Cal. Criminal Procedure (1963) Judgment and Attack in Trial Court, § 573, p. 578.) Defendant's withdrawal of the motion came at a time when his sanity had been restored; nothing in the record suggests he was incompetent when he withdrew the motion.

Defendant relies on *People* v. *Hale, supra,* 44 Cal.3d 531, for the proposition that the question of his incompetence, once brought to the attention of the trial court, cannot be abandoned. However, in *Hale,* the trial court expressed a doubt as to the defendant's possible *present* incompetence, but no section 1368 hearing was held. The *Hale* court asserted that once such a doubt arose, the issue could not be abandoned. Here, when the issue was brought to the court's attention, a competence hearing was held. The only issue not decided was defendant's *previous* mental competence.

■ Defendant also claims that the trial court had no jurisdiction to try him. Although we cannot clearly make out his argument, it appears to be that a jurisdictional void resulted from either the fact he was incompetent or the fact that defense counsel had information that he was incompetent but failed to reveal it. In support of this proposition, defendant relies on cases in which the court failed to order a section 1368 hearing after the court had been presented substantial evidence of defendant's incompetence. (See *People* v. *Hale, supra,* 44 Cal.3d 531; *People* v. *Pennington, supra,* 66 Cal.2d 508; *People* v. *Tomas* (1977) 74 Cal.App.3d 75 [141 Cal.Rptr. 453].) In those cases, the courts concluded that the trial court, having failed to comply with its section 1368 statutory duty, had no jurisdiction to continue. (*Pennington, supra,* at p. 521; *Tomas, supra,* at p. 92.) Here, however, the court was not presented with any evidence of defendant's incompetence *during the trial*. Thus, it did not lose its power to proceed until such evidence was presented to it for the first time at the sentencing hearing. At the time such evidence was presented to the court, the court properly suspended the proceedings and held a section 1368 hearing.

To the extent defendant's argument may be construed to be a contention that the court had no jurisdiction to try him because he was incompetent during trial, we note that no determination of defendant's competence

during trial has yet been made.[4] Thus, the court could not have lost jurisdiction on that ground.

Although not clearly set forth in his brief, defendant appears to also contend that he was denied effective assistance of counsel because of his counsel's failure to timely raise the issue of his incompetence at trial. A claim of inadequate assistance is shown if a defendant establishes that "trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates . . . [and] counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)[5]

The *Pope* court further asserted: "Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus. In habeas corpus proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of. (Citations.) . . . Having afforded the trial attorney an opportunity to explain, courts are in a position to intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence." (Fn. omitted.) (*Id.,* at p. 426.)

The record before us does not clearly set forth the sequence of events; consequently we are unable to ascertain exactly what information defense counsel possessed when he decided not to bring the question of defendant's competence to the attention of the court. At one point, counsel indicated that, although he first received an oral report from Dr. Thomson that defendant was competent, he later received a written report that defendant was not able to cooperate in his defense. Counsel later indicated to the court and stated in his declaration that after receiving the written report from Dr. Thomson he had a subsequent conversation with the psychiatrist which effectively nullified the written conclusion.

Based on the discrepancies in the record before us, we are unable to determine the precise information defense counsel had in his possession at the time of trial. Thus we cannot conclude whether defense counsel was incompetent for failing to timely tender to the court the question of

---

[4] Because no hearing on the issue of defendant's competence at the time of trial was ever held, the prosecution never had the opportunity to present evidence on his competence. (See § 1369, subd. (c).)

[5] Although the claim here is not that an actual "defense" to the crime itself was withdrawn, but that defendant's right not to be tried while mentally incompetent was not protected by his attorney, we see no reason why the *Pope* standard should not apply in this situation.

defendant's ability to cooperate in his defense. Habeas corpus would be a more appropriate remedy.

The judgment is affirmed.

Sims, Acting P. J., and Marler, J., concurred.