**UNITED STATES of America**

v.

**Russell Eugene WESTON, Jr., Defendant.**

**No. CRIM.A. 98–357(EGS).**

United States District Court, District of Columbia.

July 15, 2004.

---

A.J. Kramer, Office of the Federal Public Defender, Gregory Lawrence Poe, Crowell & Moring, L.L.P., Washington, DC, for Defendant.

Bruce R. Hegyi, Ronald L. Walutes, Jr., U.S. Attorney's Office, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

On July 1, 2004, this Court heard testimony and argument with respect to the government's request to extend the defendant's involuntary medical treatment for an additional 180–day period from May 19, 2004, until November 19, 2004, pursuant to 18 U.S.C. § 4241(d). Upon consideration of the uncontroverted testimony of the government's expert witness, Dr. Sally Johnson, which the Court credits, and her uncontroverted monthly progress reports, which the Court also credits, this Court is persuaded by clear and convincing evidence that the defendant's mental health condition is improving, although he currently lacks the requisite capacity to proceed to trial. The Court further credits Dr. Johnson's opinion that there is a substantial probability that the defendant will attain the capacity to permit the trial to proceed within the foreseeable future.

In *Jackson v. Indiana*, the Supreme Court held that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed at trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." 406 U.S. 715, 739, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *see* 18 U.S.C. § 4241(d)(2)(A) (defendant may be treated for a "reasonable period of time" if the court "finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed"). The Court added "even if it is determined that the defendant probably

soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." 406 U.S. at 739, 92 S.Ct. 1845.

## I. Continued Progress

■ While defendant argues that "his delusions about his case remain unchanged," Dr. Johnson identified the critical questions as (1) "Despite his delusional thinking, with his degree of investment . . . can he also consider the reality of the situation recognizing other people don't agree with him and proceed through the trial working with his attorney to resolve his case despite his belief set?"; and (2) "[W]hat can he do versus what is he willing to do?" Tr. 5/5/04 at 31; see Def.'s Supplemental Proposed Findings of Fact and Conclusions of Law at 5. Dr. Johnson believed that the defendant's mock trial performance was telling because it demonstrated that when someone other than Dr. Johnson asked him to participate in a "hypothetical" trial, the defendant "did cooperate and he did . . . demonstrate that he could". Tr. 5/2/04 at 31–32.

After the mock trial exercise, the group facilitator told Dr. Johnson that "if I were going to trial, I would hire Mr. Weston as my attorney." Tr. 5/5/04 at 18. Specifically, the facilitator reported that Mr. Weston "had actively and successfully participated" in the mock trial and "showed a good understanding of the general trial procedure, the role of the jury, the role of the judge, the role of the defense attorney, the role of the prosecutor, and [Mr. Weston] was able to think about defenses and formulate a defense." *Id.* After noting that Mr. Weston successfully developed a "technical defense", Dr. Johnson testified that Mr. Weston's performance in the mock trial was "probably the biggest step outside of his ability to leave the seclusion area." *Id.* at 19.

At the July 1, 2004, Hearing, Dr. Johnson reiterated her earlier concern that "the issue that he chooses what he is going to talk about is, in my opinion, as much an issue about whether he actually has the capacity to talk about something." Tr. 7/1/04 at 21–22. Dr. Johnson also noted that at their joint June 18, 2004, meeting Mr. Weston "was less willing, from my perspective anyway, to discuss [the delusions] with [Dr. Johnson and defense counsel] than he had been in previous meetings." Tr. 7/1/04 at 30. Dr. Johnson explained that she "had made an effort to have him consider a hypothetical situation and asked a series of questions about what he would do or what he could do, how he would handle it. And he simply refused to answer those questions or to be directly involved in that discussion. And yet at the mock trial . . . he actually demonstrated an ability to think through those very same issues and to verbalize his thinking, to demonstrate his understanding." Tr. 7/1/04 at 22.

After a subsequent mock trial exercise where Mr. Weston played the role of the prosecuting attorney, Dr. Johnson reported that the group facilitator "found Mr. Weston's performance to be just as good as it had been in the defense attorney role and indicated that he was able to give a coherent and appropriate . . . opening statement, was able to do the examination and cross examinations and to prepare a closing statement." *Id.* at 24. Dr. Johnson also noted that the facilitator thought that Mr. Weston effectively identified "the flaws in [the mock defendant's] alibi and those types of issues, so that he was very attentive to the details of the scenario and able to work within them." *Id.* at 25.

Dr. Johnson met with the defendant upon his return to Butner Federal Medical Center on July 6, 2004. Johnson Report 7/8/04 at 3. Mr. Weston refused to discuss

the most recent hearing with Dr. Johnson. *Id.* Dr. Johnson reported that "[e]ven simple questions such as whether he could hear the evaluator's phone testimony, were met with his response of. 'I have the right to remain silent.'" *Id.* This, coupled with Dr. Johnson's observation that the defendant "is very aware that it is important for him to talk ... [a]nd he controls that in a number of different ways by not talking or by only talking when his attorney is there" suggests that this Court should weigh Mr. Weston's mock trial performance more heavily than his refusal to discuss any remaining delusions. Tr. 5/5/04 at 74. The Court credits Dr. Johnson's testimony that Mr. Weston's participation in the mock trial was "probably the biggest step outside of his ability to leave the seclusion area" and finds that progress toward the goal of competency is continuing.

Further, the Court credits Dr. Johnson's opinion that because the medical literature indicated that "if you can document that the person is making continued gains on the medication, ... the general accepted clinical standard would be to continue the medication trial for at least a year." Tr. 5/5/04 at 20; *see also* 5/7/04 at 59–60 ("If someone is showing additional responses, or partial response, ... but if you don't have a full remission of symptoms, then you can continue to treat with the same drug. And with Clozaril at least ... you can continue to see additional response.").

## II.   Other Considerations

██ In determining whether the period of commitment is reasonable, the Court considers "among other things, the nature of the offense charged, the likely penalty or range of punishment for the offense, and the length of time the person has already been confined." *In re Davis,* 8 Cal.3d 798, 106 Cal.Rptr. 178, 505 P.2d 1018, 1025, *cert. denied,* 414 U.S. 870, 94

S.Ct. 87, 38 L.Ed.2d 88 (1973); *see also Jackson v. Indiana,* 406 U.S. at 738, 92 S.Ct. 1845 ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *U.S. ex rel. Little v. Twomey,* 477 F.2d 767, 770 (7th Cir.) ("a 'reasonable period of time' must be to some extent equated with the gravity of the offense involved"), *cert. denied,* 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973).

On October 9, 1998, the defendant was charged in a six-count indictment with the July 24, 1998, murders of two United States Capitol Police Officers and the attempted murder of a third officer. On March 6, 2001, this Court authorized the Bureau of Prisons to involuntarily treat the defendant with anti-psychotic medication. *See* 134 F.Supp.2d 115, 116. This decision was affirmed by the Court of Appeals on July 27, 2001. *See* 255 F.3d 873, 887 (D.C.Cir.2001). Following the defendant's unsuccessful attempt at Supreme Court review, treatment was begun in late-January 2002. If the defendant is ultimately convicted of these offenses, the minimum sentence is life in prison. This Court finds that a six month continuation of medication, resulting in an involuntary medication period of two years and eleven months, in the face of the gravest of offenses—double homicide of law enforcement officers in the government's place of business—is not unreasonable.

On June 20, 2004, Mr. Weston's weight was recorded at 317 pounds. Johnson Report 7/8/04 at 2. The defendant has gained 70 pounds since he was initially placed at Butner. Tr. 5/7/04 at 37. A general practitioner brought in to evaluate Mr. Weston described him as "morbidly obese." *Id.* With regard to this issue, Dr. Johnson has testified that "the principal contributor in his weight gain is clearly his medication

use. There is no doubt about that. It is associated with significant weight gain." Tr. 7/1/04 at 26.

However, Dr. Johnson has also testified that the defendant's "lab work is within normal limits"; he "has not developed any kind of weight related medical problems"; his "sugar is fine … his lipid profile is within normal limits"; and his "blood pressure remains normal." Tr. 5/5/04 at 21–22. On July 1, 2004, Dr. Johnson testified that Mr. Weston's "laboratory studies, including his glucose and lipids and all, continue to be entirely within normal limits." Tr. 7/1/04 at 26–27. She noted that "he's still not demonstrating those conditions like high triglycerides, onset of diabetes, for example, that we would be monitoring him for on these medications. He's not developed any of those or indicated any of those at this point." *Id.* at 27. While this Court is troubled by the defendant's weight gain on the anti-psychotic medications, the Court credits Dr. Johnson's testimony and finds that their continued use remains medically appropriate.

Therefore, it is by the Court, hereby

**ORDERED** that the government's request to extend the defendant's treatment for an additional 180–day period from May 19, 2004, to November 19, 2004, pursuant to 18 U.S.C. § 4241(d) is **GRANTED**; and it is further

**ORDERED** that the monthly progress reports shall continue through that period; and it is further

**ORDERED** that the next hearing in this case shall be held on November 10, 2004, at 10:30 a.m. in Courtroom One.