Filed 8/15/16  In re Suarez CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re JOSE SUAREZ,<br><br>on Habeas Corpus. | B275269<br><br>(Los Angeles County<br>Super. Ct. No. BA391783) |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.  Craig Richman, Judge.  Petition granted.

Ronald L. Brown, Public Defender, Albert J. Menaster, Allison Klein, Nick Stewart-Oaten, Deputy Public Defenders, for Petitioner.

Pamela J. Holmes, Deputy Director Chief Counsel, Helen M. Geoffroy, Attorney I, Robert de Ruyter, for Respondent.

Jackie Lacey, District Attorney, Phyllis Asayama, Roberta Schwartz, Deputy District Attorneys, for Real Party in Interest.

_____

Petitioner Jose Suarez was charged with felony assault on a peace officer. Prior to the preliminary hearing, the magistrate found Suarez mentally incompetent to stand trial, suspended criminal proceedings, and committed him to Patton State Hospital (Patton). Seven months later, Suarez regained mental competency and criminal proceedings resumed. The trial court subsequently found Suarez mentally incompetent, again suspended criminal proceedings, and committed Suarez to Patton, where he is currently confined. The court initiated investigations into Suarez's suitability for a conservatorship, which ultimately resulted in a determination that he failed to qualify. On June 3, 2016, Suarez filed the instant petition for writ of habeas corpus, contending that he has exceed his maximum commitment time under Penal Code section 1370, subdivision (c).[1] We agree, grant his petition for writ of habeas corpus, and order him released from Patton on the criminal charge.

## BACKGROUND

On December 14, 2011, Suarez was charged with assault on a peace officer with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (c)). On January 17, 2012, defense counsel declared a doubt as to Suarez's mental competence and criminal proceedings were suspended. The trial court transferred Suarez to the Mental Health Department of the Los Angeles Superior Court (Department 95) to be evaluated. On February 2, 2012, Suarez was found mentally incompetent to stand trial and committed to Patton. The court in Department 95 concluded Suarez's maximum commitment date at Patton was February 1, 2015. On September 26, 2012, Suarez regained mental competency and criminal proceedings resumed. Suarez was held to answer at the October 11, 2012 preliminary hearing.

On February 14, 2013, the trial court found Suarez mentally incompetent to stand trial, suspended criminal proceedings, and committed Suarez to Patton. The court

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

ordered the director of Patton to report on Suarez's progress within 90 days, with a report due every six months thereafter. The court received reports from Patton on Suarez's progress and continued to order Suarez retained for further treatment.

On February 18, 2015, the court found Suarez would reach his maximum commitment time at Patton in September 2015, and ordered that Suarez be evaluated at Patton for a Murphy conservatorship.[2] On March 3, 2015, the court requested the public guardian[3] initiate an investigation to evaluate Suarez for a Murphy conservatorship. On April 16, 2015, the Department of Mental Health notified the court that Suarez had been placed on a Lanterman-Petris-Short (LPS) conservatorship. On June 24, 2015, the court

_____

[2] Under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.), persons who are gravely disabled as a result of a mental disorder may be placed under renewable one-year conservatorships. (Welf. & Inst. Code, § 5361; *People v. Karriker* (2007) 149 Cal.App.4th 763, 774-775.) The LPS Act contains two definitions of "gravely disabled." First, Welfare and Institutions Code section 5008, subdivision (h)(1)(A), defines gravely disabled as "[a] condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." A conservatorship under the first definition is sometimes referred to as an LPS conservatorship. (See *County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 444.) Second, Welfare and Institutions Code section 5008, subdivision (h)(1)(B), defines gravely disabled as "[a] condition in which a person has been found mentally incompetent under Section 1370 of the Penal Code and all of the following facts exist: [¶] (i) The indictment or information pending against the person at the time of commitment charges a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person. [¶] (ii) The indictment or information has not been dismissed. [¶] (iii) As a result of a mental health disorder, the person is unable to understand the nature and purpose of the proceedings taken against him or her and to assist counsel in the conduct of his or her defense in a rational manner." A conservatorship imposed under the second definition of gravely disabled is known as a Murphy conservatorship, named after the legislator who sponsored the amendment adding the definition to the LPS Act. (*People v. Karriker, supra,* at p. 775.)

[3] "The public guardian is a mandated county officer. (Gov. Code, § 24000, subd. (w).) In Los Angeles County the Office of the Public Guardian, a division of the Department of Mental Health, acts as conservatorship investigator and conservator for individuals who are seriously and persistently mentally ill and in need of involuntary mental health treatment, and for frail and vulnerable elderly or dependent adults. (Welf. & Inst. Code, §§ 5350, 5351, 5352.)" (*County of Los Angeles v. Superior Court*, *supra*, 222 Cal.App.4th at p. 439, fn. 3.)

ordered the public guardian to provide a report addressing the Murphy conservatorship. On July 15, 2015, the public guardian informed the court that Suarez does not meet the criteria for a Murphy conservatorship.

On July 20, 2015, the court ruled that Suarez's separate periods of commitment to Patton would not be aggregated in calculating the maximum commitment date. The court concluded that Suarez's maximum commitment date was February 14, 2016. The court ordered that Suarez continue to receive treatment at Patton, and that the court receive reports addressing the likelihood of Suarez regaining competency. On September 9, 2015, the court stood by its ruling that the maximum commitment is not aggregated and therefore February 14, 2016, is Suarez's maximum commitment date. The court terminated competency proceedings, although criminal proceedings remained suspended. The court ordered placement to be determined by the LPS conservatorship. On October 20, 2015, the court read and considered a report from Patton addressing the likelihood of Suarez regaining competency. The court found that Suarez remained mentally incompetent. On February 3, 2016, the court found Suarez has reached his maximum commitment time, but has not reached his maximum confinement time on the criminal charge. The court denied defense counsel's motion to release Suarez, reasoning that Suarez had not reached his maximum confinement time. The court reiterated that placement should be determined by the LPS conservatorship.

On March 30, 2016, Suarez filed a petition for writ of habeas corpus in the trial court, arguing that because the court had found he reached his maximum commitment time, there is no legal basis on which to justify his continued confinement. Therefore, Suarez must be released or committed under alternative civil procedures. On April 13, 2016, the LPS conservatorship was terminated for unstated reasons and Suarez was released for further involuntary treatment as he was no longer under a conservatorship. On May 12, 2016, the public guardian's petition to renew the LPS conservatorship was dismissed by the court in Department 95.

At the May 16, 2016 hearing on the habeas corpus petition, the court noted that it received a progress report from Patton asking the court to immediately return Suarez to

4

Los Angeles County Men's Central Jail.  The report from Patton indicated that Suarez had exceeded his maximum commitment of three years and has not recovered mental competency, citing section 1370, subdivision (c)(1).  The court stated that the LPS conservatorship had been terminated and was not renewed upon expiration "for whatever reason."  The court heard oral argument and denied the petition.  The court found that it would not be appropriate to return Suarez to county jail as he would not be receiving treatment, Suarez is not unlawfully confined, and he has "reached his maximum commitment time and has not reached his maximum confinement time."  Moreover, "[t]he court is not inclined to dismiss the case."  The court noted that the district attorney refused to dismiss the charge against Suarez.  On May 23, 2016, Patton filed a motion with the court seeking reconsideration of its May 16, 2016 denial of Suarez's habeas corpus petition.

After a review of Suarez's June 3, 2016 petition for writ of habeas corpus, this court issued an order to show cause on June 17, 2016.  On June 20, 2016, the trial court ordered county counsel to conduct an investigation to determine if Suarez is eligible for an LPS conservatorship and report their findings to the court on July 20, 2016.

## DISCUSSION

Suarez contends that he has been unlawfully confined as he has exceeded the permissible commitment time under section 1370, subdivision (c).  Suarez is correct.

In *Jackson v. Indiana* (1972) 406 U.S. 715 (*Jackson*), the United States Supreme Court held that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain the capacity in the foreseeable future.  If it is determined that this is not the case, then the State must either institute the customary civil commitment proceedings that would be required to commit indefinitely any other citizen, or release the defendant."  (*Id.* at p. 738, fn. omitted.)  The California Supreme Court

5

adopted the holding in *Jackson* "that no person charged with a criminal offense and committed to state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future. Unless such a showing of probable recovery is made within this period, defendant must either be released or recommitted under alternative commitment procedures." (*In re Davis* (1973) 8 Cal.3d 798, 801 (*Davis*).)

"Under Penal Code section 1367, subdivision (a), 'A person cannot be tried or adjudged to punishment while that person is mentally incompetent.' Penal Code section 1370, which governs criminal procedure following a finding that a defendant is incompetent to stand trial, is applicable 'to a person who is charged with a felony and is incompetent as a result of a mental disorder.' (Pen. Code, § 1367, subd. (b).) Penal Code section 1370 authorizes the court to commit an incompetent defendant to a state mental hospital for a period of no more than three years. (Pen. Code, § 1370, subds. (a), (c).)[4] Once committed to a state mental hospital, reports charting the defendant's progress must be filed with the court at statutorily provide intervals. If the medical staff determines that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future, the defendant must be returned to the court for further proceedings. (Pen. Code, § 1370, subds. (b) & (c).)" (*People v. Karriker* (2007) 149 Cal.App.4th 763, 780-781, fns. omitted.) Any further commitment is permitted only if the requirements for a conservatorship under one of the provisions of the LPS Act (Welf. & Inst. Code, § 5000 et seq.) are met. (*County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 443; *People v. Karriker, supra,* at p. 776.) Alternatively, the court can dismiss the charges and order the defendant released. (*Davis, supra,* 8 Cal.3d at p. 806 ["if

---

[4] The Legislature added the three-year limit to section 1370 in response to the California Supreme Court decision in *Davis*. (*In re Polk* (1999) 71 Cal.App.4th 1230, 1235.)

petitioners are making no reasonable progress toward that goal [restoring competency], they must be released or held subject to alternative commitment procedures"].)

Here, the trial court's ability to hold Suarez on the instant criminal matter ended when he reached his maximum commitment date of three years pursuant to section 1370, subdivision (c). The court acknowledged that Suarez had reached his maximum commitment date, as do the Department of State Hospitals and the district attorney in their briefs to this court.[5] There had been no subsequent finding that Suarez had a substantial likelihood that the will regain mental competence in the foreseeable future. The court was required to either dismiss the assault charge against Suarez and release him, or initiate alternative commitment proceedings under the LPS Act. (§ 1370, subds. (c)(2), (e); *Davis, supra,* 8 Cal.3d at pp. 805-807.) Counsel for Suarez cited statutory and decisional authority compelling this result, which the trial court was obligated to follow. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 872 ["the trial court in the instant case committed error in failing to comply with controlling precedent"].)

As set forth in footnote 3, *ante*, there are two types of conservatorships under the LPS Act. Both require a finding that the prospective conservatee is "gravely disabled," although that phrase is defined in distinct ways—one is referred to as the LPS conservatorship (Welf. & Inst. Code, § 5008, subd. (h)(1)(A)), and the second is known as the Murphy conservatorship (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)).

The court had conducted an investigation into Suarez's suitability for a conservatorship under the LPS Act. On February 18, 2015, the court ordered Suarez evaluated at Patton for a Murphy conservatorship. On March 3, 2015, the court requested the public guardian initiate an investigation to evaluate Suarez for a Murphy conservatorship. On April 16, 2015, the Department of Mental Health notified the court that Suarez had been placed on a LPS conservatorship. On June 24, 2015, the court

---

[5] Contrary to the court's contention, the three-year time period applies to the aggregate of all commitments on the same charges. (*In re Polk, supra,* 71 Cal.App.4th at p. 1238.)

7

ordered the public guardian to provide a report addressing the Murphy conservatorship. On July 15, 2015, the public guardian informed the court that Suarez did not meet the criteria for a Murphy conservatorship. On September 9, 2015, and again on February 3, 2016, the court ordered Suarez's placement to be determined by the LPS conservatorship. On April 13, 2016, the LPS conservatorship was terminated and Suarez was released for further involuntary treatment as he was no longer under a conservatorship. On May 12, 2016, the public guardian's petition to renew the conservatorship was dismissed by Department 95. Therefore, there has been a conclusive determination that Suarez does not qualify for either the LPS or Murphy conservatorship. The court's recent attempts on June 20, 2016, to initiate an investigation into Suarez's suitability for the LPS conservatorship, while laudable, are inconsistent with the prior determination by Department 95 that Suarez fails to qualify for such a conservatorship. Because Suarez has been detained beyond the three-year period permitted by section 1370, subdivision (c), he must be released from Patton.

## DISPOSITION

The petition for writ of habeas corpus is granted. Patton State Hospital is directed to return Petitioner Jose Suarez to the Los Angeles County Superior Court for further proceedings under Penal Code section 1370, subdivision (c)(2). At the request of counsel for the Department of State Hospitals and counsel for Suarez, Patton State Hospital is ordered to construct an appropriate aftercare plan within five calendar days after issuance of the remittitur. (Health & Saf. Code, § 1262.) Upon return to the superior court, the court is ordered to act expeditiously pursuant to Penal Code section 1370, subdivision (c)(2), and make a finding as to whether Suarez is "gravely disabled" as defined in Welfare and Institutions Code section 5008, subdivision (h)(1)(B). If the court finds Suarez is gravely disabled, it shall then order the public guardian to initiate conservatorship proceedings. If the court finds Suarez is not gravely disabled, the court shall order the felony complaint dismissed and Suarez released from all custody on this

8

case.  In the interest of justice and to prevent frustration of the relief granted, this decision shall be immediately final as to this court.  (Cal. Rules of Court, rule 8.387(b)(3)(A).)


                    KRIEGLER, J.


We concur:


                    TURNER, P. J.



                    RAPHAEL, J.*

---

        * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.